UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

SUNBURST MINERALS, LLC,

    Plaintiff/Counterdefendant,

vs.

EMERALD COPPER CORP.,

    Defendant/Counterclaimant.

3:15-cv-08274 JWS

ORDER AND OPINION

[Re: Motion at Docket 52]

## I. MOTION PRESENTED

At docket 52 plaintiff and counterdefendant Sunburst Minerals, LLC ("Sunburst") moves for partial summary judgment pursuant to Federal Rule of Civil Procedure 56. Sunburst supports the motion with a separate statement of facts at docket 53. Defendant and counterclaimant Emerald Copper Corp. ("Emerald") opposes the motion at docket 70, supported by controverting statement of facts and separate statement of additional facts at docket 71. Sunburst replies at docket 76 and supports its reply with a "supplemental statement of facts" at docket 78.[1] Oral argument was requested, but would not assist the court.

---

[1] Although this latter filing is not contemplated by LRCiv 56.1, the court will consider it because Emerald has not objected to or moved to strike it.

## II. BACKGROUND

Sunburst's complaint refers to 53 unpatented lode claims and mill sites in Mohave County, Arizona, commonly known as "the Emerald Isle Mine," but identifies only the following 52:[2]

***Mill Sites*:**

1. Copper Hill Mill Site No. 1
2. Copper Hill Mill Site No. 2
3. Copper Hill Mill Site No. 3
4. Copper Hill Mill Site No. 4
5. Copper Hill Mill Site No. 5
6. Copper Hill Mill Site No. 6
7. Copper Hill Mill Site No. 7
8. Copper Hill Mill Site No. 8
9. Copper Hill Mill Site No. 10
10. Copper Hill Mill Site No. 11
11. Copper Hill Mill Site No. 12
12. Hermes Mill Site No. 13
13. Copper Hill Mill No. 1 Mill Site 14
14. Copper Hill Mill No. 1 Mill Site No. 15

***Lode Claims*:**

1. Copper Hill No. 2
2. Hermes
3. Hermes No. 2
4. Jimtown Copper No. 1
5. Valley Copper No. 1
6. Valley Copper No. 2
7. Valley Copper No. 3
8. FDR
9. Emerald No. 1
10. Emerald No. 2
11. Emerald 5
12. Emerald 6
13. Emerald 7
14. Emerald 8
15. Emerald 9
16. Emerald 10
17. Emerald 11
18. Emerald 12
19. Emerald 13
20. Emerald 14
21. Emerald 15

---

[2]*Compare* doc. 45 at 1 ¶ 1 (53 claims and mill sites), *with* doc. 45-1 at 1–2; doc. 45-2 (52 claims and mill sites). The discrepancy may have resulted from the fact that Emerald #19 is listed twice in the trustee's deed conveying the claims and mill sites to Sunburst. *See* doc. 78-1 at 54–57.

|     |     |            |
| --- | --- | ---------- |
| 22. | Emerald 16 |
| 23. | Emerald 17 |
| 24. | Emerald 18 |
| 25. | Emerald 19 |
| 26. | Emerald 20 |
| 27. | Emerald #21 |
| 28. | Emerald #22 |
| 29. | Emerald #30 |
| 30. | Emerald 31 |
| 31. | Emerald #43 |
| 32. | Emerald 44 |
| 33. | Emerald #45 |
| 34. | Emerald 2B |
| 35. | Emerald 3A |
| 36. | Emerald 4A |
| 37. | Emerald 40 |
| 38. | Emerald 41 |

Sunburst located these last five claims (claims 34–38) in June 2016.[3] Sunburst's motion does not seek summary judgment regarding these new claims; it seeks partial summary judgment regarding the remaining claims and mill sites, which were located on various dates between 1907 and 2004. All subsequent references to "Sunburst's claims" excludes the claims Sunburst located in 2016.

In 2012, 2014, and 2016, Emerald located unpatented mining claims in the same general location as Sunburst's claims.[4] Sunburst brings this quiet title and trespass action against Emerald, alleging that Emerald's claims are invalid because they overlap with and are junior to Sunburst's valid claims. Emerald's counterclaim alleges that its claims were staked on open ground, and therefore asserts quiet title and trespass causes of action against Sunburst. The parties recognize that the fate of their competing trespass causes of action depends solely on the success of their respective quiet title actions.[5]

---

[3] Doc. 45 at 4 ¶ 22.

[4] Doc. 46 at 7 ¶ 2.

[5] Doc. 52 at 17; doc. 70 at 11.

## III. STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[6] The materiality requirement ensures that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[7] Ultimately, "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the nonmoving party."[8] However, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[9]

The moving party has the burden of showing that there is no genuine dispute as to any material fact.[10] Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, the moving party need not present evidence to show that summary judgment is warranted; it need only point out the lack of any genuine dispute as to material fact.[11] Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[12] All evidence presented by the non-movant must be believed for purposes of summary judgment, and all justifiable inferences must be drawn in favor of the

---

[6] Fed. R. Civ. P. 56(a).

[7] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[8] *Id.*

[9] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[10] *Id.* at 323.

[11] *Id.* at 323–25.

[12] *Anderson*, 477 U.S. at 248–49.

non-movant.[13]  However, the non-moving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[14]

## IV.  DISCUSSION

At the outset, it is necessary to define the nature of the parties' causes of action. Although the parties denominate their respective suits as quiet title actions, they are properly classified as competing possessory actions.[15]  In an ordinary quiet title action, such as an action that involves patented mining claims, the fee title is at issue.  Actions such as this, where the parties assert competing possessory rights to mine the land but paramount title is held by the United States, are determined by the law of possession.[16] The plaintiff need not rely solely on the strength of her own title, as in a quiet title action. Rather, the prevailing party is the one with better possessory rights.[17]  Emerald does not dispute that Sunburst is in possession of the disputed land and that Sunburst's claims were located first.  Thus, Emerald bears the burden of proving that its mining rights are superior, and Sunburst's evidence will be viewed in the most favorable light.[18]

---

[13]*Id.* at 255.

[14]*Id.* at 248–49.

[15]*See Rundle v. Republic Cement Corp.*, 341 P.2d 226, 228–29 (Ariz. 1959).

[16]*Id.* at 228.  *See also* 2 Rocky Mountain Mineral Law Foundation, *American Law of Mining* § 36.03 (2d ed. 2017) ("The statute grants a possessory right, a term that is more correct than possessory title, because the United States retains the equitable title until application has been made for patent and the purchase price paid and retains the legal title until patent is issued.").

[17]*Rundle*, 341 P.2d at 229 (quotation omitted).

[18]*Bagg v. New Jersey Loan Co.*, 354 P.2d 40, 45 (Ariz. 1960) ("[W]here the party in possession seeks to free its property from the adverse claims of a subsequent locator," the subsequent locator bears the burden of showing "a superior right to possession in himself" and "the evidence of the prior locator will be viewed in the most favorable light it will justify.").

Sunburst's motion essentially argues that Emerald cannot produce sufficient evidence to meet its burden of proving the invalidity of any of Sunburst's senior claims. In response, Emerald argues that there are "disputes of material fact concerning: (1) Sunburst's title; (2) abandonment of Sunburst's claims; (3) claim monumenting; (4) mineralization of millsite claims; and (5) Sunburst's predecessor's failure to act when notified of oversized claims."[19] The court will address these arguments in turn. But before doing so, it is necessary to address Emerald's argument that a motion for summary judgment is premature "[w]here discovery on the merits is not complete and the case is not ready for trial."[20] This argument is without merit. Neither of the cases upon which Emerald relies involved summary judgment motions.[21] Rule 56(b) provides that "a party may file a motion for summary judgment at any time until 30 days after the close of all discovery." Thus, even though discovery remains open, Sunburst will be entitled to summary judgment on each claim and defense for which it can show there is no genuine dispute of material fact and it is entitled to judgment as a matter of law.[22] If Emerald believed that it lacked evidence necessary to support its opposition, it was required to submit an affidavit or declaration that specifically explained why it could not

---

[19]Doc. 70 at 2.

[20]*Id.*

[21]*Bishop v. Petro-Chem. Transp., LLC*, 582 F. Supp. 2d 1290, 1292 (E.D. Cal. 2008) (involving class certification motion); *Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 493 (D.N.J. 2000) (involving motion to certify claim as collective action under the Fair Labor Standards Act).

[22]Fed. R. Civ. P. 56(a).

yet present this evidence.[23] Simply observing that "[d]iscovery remains open"[24] does not suffice.[25]

**A.    Sunburst's Title**

In a March 22, 2010 deed and bill of sale, Redstone Resources Corp. ("Redstone") sold its interest in the Emerald Isle Mine to Medina Property Group, LLC ("Medina").[26] About three months lather, Medina sold its interest in the mine to Sierra Resource Group, Inc. ("Sierra").[27] Then, in 2015, Sunburst obtained Sierra's interest in the mine via trustee's deed.[28] Emerald acknowledges these facts, but argues that there may be a gap in the chain of title because Sierra might not have owned the title to the property.[29] In support of this argument, Emerald points to two pieces of evidence.

The first is a press release issued by Copper Mesa Mining Corp. ("Copper Mesa"), Redstone's parent company. The release states that on October 2, 2009, Copper Mesa "announced the transfer of Redstone Resources' properties to the lender of a bridge loan facility . . . as a result of a non-payment by [Copper Mesa] in June

---

[23] Fed. R. Civ. P. 56(d).

[24] Doc. 70 at 9.

[25] *See State of Cal., on Behalf of California Dep't of Toxic Substances Control v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998) (failure to submit necessary affidavit is proper ground for denying request for additional discovery and proceeding to summary judgment); *THI-Hawaii, Inc. v. First Commerce Fin. Corp.*, 627 F.2d 991, 994 (9th Cir. 1980) ("THI's failure to move for a continuance under [a previous version of Rule 56(d)] prevents it from complaining of the timing of summary judgment in this case."); 10B Charles Alan Wright, Arthur R. Miller, *et al.*, *Fed. Prac. & Proc. Civ.* § 2740 (4th ed. 2017) ("[W]hen the movant has met the initial burden required for the granting of a summary judgment, the opposing party either must establish a genuine issue for trial under Rule 56(c) or explain why it cannot yet do so under Rule 56(d).").

[26] Doc. 78-1 at 8.

[27] *Id.* at 11.

[28] Doc. 78-1 at 54–57.

[29] Doc. 70 at 3.

2009."[30] Emerald argues that this evidence creates a factual dispute as to whether Redstone sold its interest to some unspecified lender in 2009, as the press release states, instead of to Medina in 2010. In response, Sunburst argues that the press release is hearsay and there is no evidence corroborating its statement that Redstone transferred its interest in the mine in 2009.[31]

The second piece of evidence is the 2010 complaint that the Securities and Exchange Commission ("SEC") filed against Jaime Santiago Gomez ("Gomez"), who was the president of Quri Resources, Inc. ("Quri") and, according to Emerald, a managing member of Medina.[32] The SEC's complaint alleges that in February 2009 Gomez issued false and misleading press releases stating that Quri "had signed a letter of intent with Copper Mesa Corp. to acquire the Emerald Isle Copper Mines."[33] According to the SEC's complaint, Gomez did not actually sign the letter of intent until August 2009 and the deal was doomed anyway because Quri was in "no financial position to complete an acquisition."[34]

Emerald's evidence is insufficient to raise a question of material fact. In light of the signed and recorded bill of sale that purports to transfer Redstone's interest in the mine to Sierra, no reasonable jury could find that Redstone lacked a valid interest in the mine based on Copper Mesa's vague press release or the SEC's tangentially-related allegations.

**B.     Abandonment**

Emerald argues that Sunburst's predecessors-in-interest abandoned the claims under two theories: (1) failure to make necessary filings and (2) failure to properly

---

[30] Doc. 71-1 at 119.

[31] Doc. 76 at 3.

[32] Doc. 71-1 at 142–57.

[33] *Id.* at 146 ¶¶ 20–21.

[34] *Id.* at 147 ¶ 22.

monument the claims' boundaries. Emerald bears the burden of proving abandonment with clear and convincing evidence.[35]

### 1. Failure to make necessary filings

The Federal Land Policy and Management Act of 1976 ("FLPMA") imposed a new requirement on claim owners to make certain filings in order to maintain their possessory title.[36] This included an annual requirement to file with the BLM an affidavit of assessment work, a notice of intention to hold the claim, or a related report.[37] The consequence for not filing such an instrument was abandonment of the claim.[38]

Emerald argues that there are disputed questions of material fact regarding whether Sunburst's "Mineral Survey Claims" were abandoned in this manner.[39] Emerald asserts, without any evidentiary support, that the BLM's records "provide no evidence that annual assessment work was performed" for these claims between 1980 and 1992.[40] This assertion is refuted by the records that Sunburst submitted in support of its reply, which show that Sunburst's predecessors-in-interest filed FLPMA-compliant notices with the BLM between 1980 and 1992.[41]

---

[35]*Velasco v. Mallory*, 427 P.2d 540, 546 (Ariz. Ct. App. 1967) ("Proof of abandonment or forfeiture lies with the party asserting the fact and it must be established by clear and convincing evidence."). *See also Kinney v. Fleming*, 56 P. 723, 724 (Ariz. 1899) ("Referring to a mine in a location notice casts upon the party attacking the notice the burden of showing that there is no such mine as referred to.").

[36]43 U.S.C. § 1744.

[37]*Id*. § 1744(a)(2).

[38]*Id*. § 1744(c).

[39]The "Mineral Survey Claims" consist of Copper Hill No. 2; Hermes; Hermes No. 2; Jimtown Copper No. 1; Valley Copper No. 1; Valley Copper No. 2; and Valley Copper No. 3. Doc. 52 at 3.

[40]Doc. 70 at 9.

[41]Doc. 78-1 at 59–119.

## 2. Claim monumenting

Section 27-203 of the Arizona Revised Statutes provides that the locator of a claim must, among other things, "[m]onument the claim on the ground within ninety days from the time of the location so that its boundaries can be readily traced."[42] With respect to lode claims, the monuments must consist of either "six substantial posts projecting at least four feet above the surface of the ground" or "substantial stone monuments at least three feet high, one at each corner of the claim and one at the center of each end line of a lode claim."[43] A locator's failure to comply with the requirements of A.R.S. § 27-203 results in "an abandonment of the claim, and all right and claim of the locator shall be forfeited."[44]

Emerald argues that the affidavits of Kenneth E. Schaaf ("Schaaf"), Brian Dirk Hatter ("Hatter"), Donald T. Scoretz ("Scoretz"), Howard Metzler ("Metzler"), and Llao David Hutzinger ("Hutzinger") create a genuine dispute as to whether Sunburst's predecessors-in-interest complied with A.R.S. § 27-203(A)(2).[45] Specifically, Emerald argues that these affidavits show that (1) Sunburst's predecessor, El Paso Natural Gas ("El Paso"), failed to re-stake the Mineral Survey Claims after it abandoned its patent application,[46] and (2) Sunburst's predecessor St. Genevieve Resources ("SGR") failed to monument the 20 new claims it located in 2004.[47]

Schaaf is a co-owner of Southwest Land Surveying and Consulting ("Southwest Land Surveying"). He states in his affidavit that he and surveyor Earnest Schaaf visited

---

[42] A.R.S. § 27-203(A)(2).

[43] A.R.S. § 27-204.

[44] A.R.S. § 27-203(E).

[45] Doc. 71 at 2 ¶ 6.

[46] Doc. 70 at 4; doc. 71 at 6 ¶ 17.

[47] Doc. 70 at 4–5; doc. 70 at 6–7 ¶¶ 22–24.

-10-

the Emerald Isle Mine site in 2012 and looked for monuments.[48] "Of the 20 claims purported to be located on the eastern side of the property," Schaaf states, "there was minimal evidence of monuments being placed on the site."[49] Southwest Land Surveying's 2012 survey of mining claims states in pertinent part that no location monuments were found for each of the seven Mineral Survey Claims or the following five claims that SGR located in 2004: Emerald 22, 31, 43, 44, and 45.[50]

Hatter is a surveyor Emerald hired to conduct a field evaluation in 2015. With regard to monumentation, Hatter's report generally concurs with Earnest Schaaf's findings[51] and additionally states as follows:

> A 1 ½" aluminum cap on a No. 5 rebar was found at all of the corners that I found that were not destroyed by mining activity. This clearly does not meet Statute. There was no evidence that a post or rock mound meeting the Arizona Statute was placed at the center of each end line or at the corner. Older 4" x 4" wood posts were found in the area and it is my opinion that these posts predate Mineral Survey 4732 A & B and were not placed at the corners after Mineral Survey 4732 A & B Final Certificate was withdrawn. I did find some ¾" PVC pipe at or near some of the corners that were not shown on the Record of Survey by Mr. Schaaf. These clearly do not meet Arizona Statute.[52]

Scoretz is Emerald's CEO. His affidavit merely states that [t]hrough the work of Southwest Land Surveying and Consulting, [he] learned of numerous deficiencies involving prior claims on the site."[53] Metzler is a geologist who states that "[i]n 2005-2006" he worked at the Emerald Isle Mine for at least a year, and during that time he "noticed a few occasional markers in the ground, but the markers were not of the sort

---

[48]Doc. 71-1 at 3.

[49]*Id.*

[50]Doc. 52-7 at 39.

[51]Doc. 71-1 at 8 ("In conclusion it is my opinion that the field conditions shown on Mr. Schaaf's Record of Survey . . . has not substantially changed in the exception of the ¾" PVC Pipe.").

[52]*Id.*

[53]*Id.* at 11.

-11-

that would give [him] any indication that [he] was on unpatented mining claims."[54] Finally, Hutzinger states that he has worked at the mine since 2004, and "the only claims on the land that [he] witnessed and recognize are the claims made by Emerald Copper Corporation and the one claim located by Howard Metzler."[55]

### a. The Mineral Survey Claims

Sunburst responds to Emerald's arguments regarding the Mineral Survey Claims by noting that Emerald cites no authority that requires a locator to re-stake the boundaries of a claim after it abandons a patent application. A.R.S. § 27-203 merely requires a locator to monument his claim within 90 days "from the time of the location." Sunburst also argues that Emerald's witnesses shed no light on whether Sunburst's predecessors complied with A.R.S. § 27-203 because they did not observe those claims anywhere near the time of location (which occurred on various dates "between 1907 and the 1970s").[56] At most, Emerald's evidence shows that the Mineral Survey Claim monuments were not maintained over time, Sunburst argues, and "[t]he failure to maintain the monuments does not invalidate the claims."[57]

The court agrees with Sunburst that El Paso was under no obligation to re-stake the monuments after it withdrew its patent application. As the Nevada Supreme Court stated in *Nichols v. Ora Tahoma Mining Co.*:

> The general rule is that when a location is once sufficiently marked on the surface so that its boundaries can be readily traced, and all other acts of location are performed as required by law, the right of possession is fully

---

[54]*Id.* at 15.

[55]*Id.* at 21.

[56]Doc. 76 at 5.

[57]*Id.* (citing 2 Rocky Mountain Mineral Law Foundation, *supra*, § 33.04[8] ("Once a location is properly marked, the claimant has complied with the requirements of the law, and in almost all states he need not, to preserve his right of possession as against rival claimants, maintain or restore the monuments or markings if they are removed or obliterated without his fault. The inability of a subsequent locator to find monuments or to trace the boundaries of a location is not proof that it was not marked on the ground.")).

-12-

> vested in the locator, and he cannot be divested of this right by the removal or obliteration or destruction of the monuments, stakes, marks, or notices done without his fault, while he continues to perform the necessary work upon the claim.[58]

Thus, the pertinent question is whether Emerald's evidence tends to clearly and convincingly show that Sunburst's predecessors failed to place the required monuments within 90 days of when the claims were located.

The California Supreme Court addressed a similar question in *Temescal Oil Mining & Development Co. v. Salcido*.[59] *Salcido* involved a dispute over oil-mining rights. Although the defendant located his claim in 1891 and the plaintiff did not locate its claim until 1900, the plaintiff argued that its claim was superior in part because the defendant had failed to adequately monument his claim.[60] At trial, the plaintiff presented the testimony of witnesses who "did not see the monuments when they looked for them some years after they were placed" and argued that this evidence created a jury question regarding whether the monuments were ever constructed.[61] The California Supreme Court upheld the trial court's refusal to submit this question to the jury, finding that the plaintiff's evidence did "not raise a substantial conflict with the testimony of the parties who placed the monuments."[62] "The evidence that the stakes were placed there in 1891 is not disputed," the court held, "and, as against that evidence, testimony to the effect that the stakes could not be found in 1899 raises no presumption."[63]

---

[58]*Nichols v. Ora Tahoma Mining Co.*, 151 P.2d 615, 622 (Nev. 1944).

[59]69 P. 1010 (Cal. 1902).

[60]*Id.* at 1010.

[61]*Id.* at 1011.

[62]*Id.*

[63]*Id.*

-13-

In accord with *Salcido*, the court finds that Earnest Schaaf's and Hatter's failure to find monuments placed on the Mineral Survey Claims in 2012 and 2015 does not raise a genuine issue of material fact. No reasonable jury could find that these observations, which occurred between 40 and 105 years after the fact, clearly and convincingly dispute the locators' attestations that the monuments were posted at the time of location.[64]

### b. The claims that SGR located in 2004

The claims that SGR located in 2004 present a different story, however. Emerald first asserts that "SGR's records [show] that [it] failed to monument its claims within 90 days."[65] This is an apparent reference to "[i]nternal reports generated by the project manager of the site, Joe Sawyer," that according to Emerald, "indicate that on the weeks of January 23, 2005 and January 30, 2005, [the individual who located these claims, Robert Cameron,] was still in the process of 'staking the claims.'"[66] But in support of these factual assertions, Emerald merely cites the five affidavits discussed above, generally.[67] This citation violates both Rule 56(c)(1)(A) and LRCiv 56.1(b) because it does not refer to any specific parts of any materials in the record. Further, the court has reviewed the cited affidavits and finds that they contain no mention of any reports generated by Joe Sawyer. The court will disregard Emerald's argument regarding Joe Sawyer's reports for lack of evidentiary support.

Emerald next cites Huntzinger's affidavit, in which he states that SGR hired him in November 2004 to "perform maintenance on the heap leach."[68] After a couple of months, Huntzinger was "assigned the job of checking the monitor wells around the

---

[64] *See* doc. 52-2 at 2–69.

[65] Doc. 70 at 11.

[66] *Id.* at 4.

[67] Doc. 71 at 7 ¶ 25.

[68] Doc. 71-1 at 18.

-14-

site," which involved traveling "to different parts of the mine site where the monitor wells were located."[69] Huntzinger states that the claim posts placed by Metzler in "[s]ometime around 2006-2007" were the only ones "he recognized on the site" until Emerald started placing its posts in 2012.[70] Around that time, Huntzinger states, then-owner Sierra Resources told him to "go into town and get some PVC pipe and [start] putting stakes on the claims."[71]

In response, Sunburst argues that strict compliance with the claim monumentation requirement is not required; substantial compliance suffices.[72] This argument is of no avail to Sunburst, however, because Sunburst does not explain how SGR might have substantially complied with the monumentation requirement. Sunburst next challenges the weight of Huntzinger's observation that no monuments were posted because Huntzinger "was not tasked with inspecting the claims staked by SGR."[73] Sunburst also argues that Huntzinger's observation is refuted by (1) Hatter's and Metzler's statements that they found "claim markers on the ground;"[74] (2) Southwest Land Surveying's 2012 survey, which located "various markers on Emerald 5–20;" and (3) Emerald's position in this litigation that the "Block Claims" (Emerald Claims Nos. 1A,

---

[69]*Id.* at 19.

[70]*Id.*

[71]*Id.* at 20.

[72]Doc. 76 at 9 (citing *Hagan v. Dutton*, 181 P. 578, 582 (Ariz. 1919) ("We find no indication in the evidence that there was any intentional concealment of the notices, and it fairly appears that there was a substantial compliance with the statute in posting the notices, and we shall not disturb the finding of the court that sufficient and legal notices of location had been posted on the Red Metal claims.")).

[73]*Id.*

[74]*Id.*

2A and 3–20)[75] are oversized, "which relies on the distance between monuments for these claims that were found on the ground."[76]

Sunburst's factual assertions are either not supported by the record or do not effectively refute Huntzinger's observations. Contrary to Sunburst's insinuation, Hatter and Metzler did not specifically state that they located claim markers on any claims that SGR located in 2004. And, although Southwest Land Surveying's 2012 survey and Emerald's litigation position regarding the Block Claims reflect that some markers were placed on some of these claims, not even Sunburst contends that this evidence shows compliance (substantial or otherwise) with A.R.S. § 27-203. The court finds that Huntzinger's affidavit, which includes his observations of the mine site at the same time the monuments were allegedly placed in 2004, coupled with Sunburst's lack of any evidence showing that the required monuments were timely placed, is sufficient to create a genuine dispute of fact regarding whether the 2004 claims were properly monumented.

**C.    Mineralization of the Mill Site Claims**

A lode mine operator may use land "not contiguous" to the lode for milling purposes.[77] By statute, a mill site may only be located on non-mineral land.[78] The widely-recognized test for determining whether a mill site is located on mineral land asks, "does such land contain minerals of a quantity and quality which can be extracted at a profit?"[79] If the land contains "mineral of such quality and quantity to render

---

[75]Doc. 52 at 4.

[76]Doc. 76 at 10.

[77]30 U.S.C. § 42(a).

[78]*Id.* § 42.

[79]*Cleary v. Skiffich*, 65 P. 59, 61 (Colo. 1901).

-16-

expenditures for its extraction reasonable and prudent," the land is mineral in character and unsuitable for a mill site.[80]

Sunburst asserts that its mill site claims are all located on non-mineral land, relying on two authorities. The first is a report prepared by Burrett W. Clay ("Clay"), a Certified Mineral Examiner.[81] In that report Clay opines that the drill hole data and the cost data demonstrate "that there is no known commercial grade mineralization under the mill sites."[82] The second authority is the Non-Mineral Affidavit executed in 1975 by Harold W. Horst and W.T. Hollis in support of El Paso's patent application.[83]

Emerald argues that whether Sunburst's mill sites are located on mineral land presents a genuine factual dispute for two reasons. First, Emerald argues that "SGR attempted to overlap multiple load claims on the Sunburst Millsites," something it could not do unless it "believed minerals were present and could be extracted economically."[84] As Sunburst points out, however, Emerald "provides no evidence that SGR made a discovery of valuable mineral deposits or that those deposits, if they were discovered, were on the millsites."[85] Second, Emerald argues that Schaaf's affidavit creates a genuine question of fact. In paragraph ten of his affidavit, Schaaf states that in 2014 he "was involved in drill testing," including horizontal drilling across the mill sites, which showed "trace mineralization of copper and cobalt."[86] He states that he and professional geologist Barry Price ("Price") concluded that "the mineralization and

---

[80]*Silver Chief Mining Co., Inc.*, 40 IBLA 244, 248–49 (1979). *See also California v. Rodeffer*, 75 Interior Dec. 176, 179 (IBLA 1968).

[81]Doc. 52-7 at 2–29.

[82]*Id.* at 27.

[83]*Id.* at 31–37.

[84]Doc. 70 at 5 (citing A.R.S. § 27-201).

[85]Doc. 76 at 7.

[86]Doc. 71-1 at 3 ¶ 10.

-17-

discovery of cobalt are indicative of sufficient mineralization so that the mill site claims could be designated as being mineral in character."[87] In response, Sunburst contends that Schaaf's statement is outside the scope of his expertise as a surveyor and as to Price it is hearsay.

Schaaf's affidavit is insufficient to create an issue for trial. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[88] Schaaf's opinion that Sunburst's mill sites are located on land that is mineral-in-character is one that requires scientific, technical, or other specialized knowledge within the scope of Rule 702. And Emerald has not established that Schaaf, a surveyor, possesses the requisite expertise to offer expert opinion testimony on this topic.[89] Further, the court finds that Sunburst's hearsay objection to Schaaf's statement about Price's opinion is well-taken. But, even setting aside these two deficiencies, Schaaf's affidavit still fails to raise a question of material fact. His affidavit does not set out the quantity of minerals that their drill testing uncovered, the quality of those minerals, or the expenditures needed to extract the minerals. Even if Schaaf's opinion were admissible, it would still fall well-short of creating a jury question as to whether the Sunburst mill sites are located on land that is mineral-in-character.

---

[87] *Id.*

[88] *Anderson*, 477 U.S. at 249–50 (citations omitted).

[89] *See, e.g., Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999) (the trial court must decide whether an individual offering expert testimony has sufficient "specialized knowledge to assist the jurors in deciding the particular issues in the case.") (internal quotation omitted).

**D.     Oversized Claims**

The Mining Law of 1872 establishes that the width of a lode claim may not exceed 600 feet (300 feet on each side of the center of the claim).[90] A claim that violates this size limitation is void if the locator acted in bad faith.[91] The Arizona Supreme Court has defined good faith in this context "as honesty of purpose and absence of intent to defraud."[92] Where an oversized claim is the product of an honest mistake (for example, where the claim is not "so excessive as to show bad faith"), bad faith may be found only where the locator was notified of the excess, was given an opportunity to correct it, and subsequently failed to remedy the problem.[93] Whether a locator acted in bad faith is ordinarily a question of fact for the jury.[94]

Sunburst concedes that its Block Claims are oversized,[95] but argues that they are "not so excessive as to indicate bad faith" and Sunburst's predecessor was never given an opportunity to fix the problem before Emerald staked its claims.[96] In response, Emerald asserts that Scoretz's affidavit creates a question of material fact as to

---

[90] 30 U.S.C. § 23 ("No claim shall extend more than three hundred feet on each side of the middle of the vein at the surface . . . .").

[91] *Velasco*, 427 P.2d at 548 ("Had the Hogvalls and the subsequent Black Eagles been so excessive as to show bad faith, they would have been void.").

[92] *Geomet Expl., Ltd. v. Lucky Mc Uranium Corp.*, 601 P.2d 1339, 1343 (Ariz. 1979).

[93] *Velasco*, 427 P.2d at 548 (quoting *Jones v. Wild Goose Mining & Trading Co.*, 177 F. 95, 98 (9th Cir. 1910) ("Until [the defendants] had received [notice of the excess], and were given an opportunity to exercise [their right to select and cast off], the whole claim, including any excess due to honest mistake and free from fraud, was so far segregated from the public domain as to exempt it or any part thereof from relocation.")).

[94] *Id.*

[95] Doc. 52 at 11.

[96] *Id.* at 7, 12.

whether Sierra was notified of the problem, given an opportunity to fix it, yet did nothing.[97] Again, the evidence upon which Emerald relies is deficient.

In his affidavit, Scoretz merely states that he discussed with Sierra's CEO, Rod Martin, the "numerous deficiencies" he had discovered with Sierra's claims.[98] "After Mr. Martin denied that any deficiencies existed and expressed no interest in remedying those deficiencies," Scoretz states, "[he] directed Southwest Land Surveying and Consulting to place several mining claims on the Emerald Isle mine site."[99] Scoretz does not specifically state that he notified Sierra that the Block Claims were oversized, a fact essential to Emerald's assertion of bad faith. Lacking this evidence, Emerald has failed to raise a question of material fact.

## V. CONCLUSION

For the reasons above, the motion at docket 52 is granted in part and denied in part as follows. Sunburst is entitled to judgment in its favor as to both counts of its complaint and both counts of Emerald's countercomplaint with regard to Copper Hill Mill Site Nos. 1–8, 10–12; Hermes Mill Site No. 13; Copper Hill Mill No. 1 Mill Site Nos. 14–15; Copper Hill No. 2; Hermes; Hermes No. 2; Jimtown Copper No. 1; Valley Copper Nos. 1–3; and FDR. In all other respects the motion is denied.

DATED this 25th day of September 2017.

/s/ JOHN W. SEDWICK
SENIOR JUDGE, UNITED STATES DISTRICT COURT

---

[97] Doc. 70 at 7.

[98] Doc. 71-1 at 11.

[99] *Id.* ¶¶ 4–6.