**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | | |
|---|---|---|
| Sunburst Minerals, LLC, | ) | |
| | ) | |
| Plaintiff / Counter-defendant, | ) | 3:15-CV-8274 JWS |
| | ) | |
| vs. | ) | **ORDER AND OPINION** |
| | ) | |
| Emerald Copper Corp. | ) | **Findings of Fact and** |
| | ) | **Conclusions of Law** |
| Defendant / Counter-claimant. | ) | |
| | ) | |

## I. STATEMENT OF JURISDICTION AND INTRODUCTION

This lawsuit arises from competing assertions of the right to possess certain unpatented mining claims located near Kingman, Arizona.  The lawsuit is between citizens of different states.  Plaintiff / Counter-defendant Sunburst Minerals LLC ("Sunburst") is a citizen of Arizona.  Defendant / Counter-claimant Emerald Copper Corp. ("Emerald") is a citizen of Colorado.  The value of the disputed  mining claims exceeds $75,000.  The court has diversity jurisdiction of the lawsuit  pursuant to 28 U.S.C. § 1332.

The case was tried to the court on November 13 and 14, 2018.  The court entered pre-trial orders which narrowed the issues for trial and established legal principles applicable to this lawsuit.

In the order at docket 112, the court explained that this lawsuit is not a quiet title action, but rather an adjudication of competing possessory claims.  Noting that Emerald did not dispute that Sunburst is in possession of the disputed land and that Sunburst's claims were located first, the court held that Emerald bears the burden of proving that its mining rights are superior to those of Sunburst.  The order at docket 112 also awarded judgment in favor of Sunburst as to the following: Copper Hill Mill Site Nos. 1-8, 10-12; Hermes Mill Site No. 13; Copper Hill Mill No. 1 Mill Sites Nos. 14-15; Copper Hill No. 2; Hermes; Hermes No. 2; Jimtown Copper No. 1; Valley Copper Nos. 1-3 and FDR.

The order also said that Sunburst concedes that its Block Claims are oversize, but not sufficiently so as to indicate bad faith.  However, in paragraph 2 on page 3 of docket 155, their Joint Statement of Issues, the parties jointly identified the issue of whether the Block Claims are oversize as one to be resolved at trial.  The seeming discrepancy between the order and the joint statement was discussed at the pre-trial conference.   After hearing from the parties, the court said that whether the Block Claims are oversize would be an issue for trial.  Upon reviewing the order and Sunburst's underlying motion at docket 52, the court now recognizes that the order erred in saying Sunburst had conceded that the Block Claims are oversize.  A more accurate reading of the motion is that Sunburst simply accepted for the sake of its pending summary judgment motion that Emerald was correct in asserting that the claims varied between 607 and 631 feet so that it could argue that such a modest excess was not evidence of bad faith which could invalidate the claims.

In the order at docket 112, the court found that the affidavit of Llao David Huntzinger created a question of material fact regarding the claims staked in 2004 by

Sunburst's predecessor in interest. The question is whether those claims were located and monumented in accordance with the applicable law.

In its order at docket 127, the court ruled that Sunburst is entitled to judgment in its favor as to claims Emerald No. 1 and Emerald No. 2. In the order at docket 136, the court held that Sunburst's Block Claims are invalid to the extent that they exceed 600 feet in width, but denied Emerald's motion to declare the Block claims invalid in their entirety.

The Sunburst claims, whose validity remained for determination at trial, were the (1) Block Claims which are Emerald 5 thru 30, (2) the 2004 Claims staked by Sunburst's predecessors-in-interest other than the Block Claims which are Emerald 21, 22, 30, 31, and 43-45, and (3) the 2016 Claims which were staked and amended by Sunburst in which are Emerald 5, 7, 9, 2B, 3A, 4A, 40, and 41.

Pursuant to Federal Rule of Civil Procedure 52, the court sets out its findings of fact and conclusions of law below. Findings number 1 thru 25 are facts to which the parties agreed in their Joint Statement of Uncontested Facts at docket 154. The court has edited these paragraphs to correct typographical errors and to conform to drafting conventions used by the court in subsequent findings. Findings 26 thru the end are facts found by the court based on the evidence presented.

## II. FINDINGS OF FACT

1. Sunburst claims an interest in unpatented lode claims and mill sites in Mohave County, Arizona ("the Sunburst Claims"), commonly known as the Emerald Isle Mine. These clams are:

**Mohave County**

| Claim Name | Recorder's Book/Page; Fee No. | BLM AMC Number |
|---|---|---|
| Emerald 5 | 5282/274 (Amended 2016040406) | 364265 |
| Emerald 6 | 5283/275 | 364266 |
| Emerald 7 | 5282/276 (Amended 2016040407) | 364267 |
| Emerald 8 | 5282/277 | 364268 |
| Emerald 9 | 5282/278 (Amended 2016040408) | 364269 |
| Emerald 10 | 5282/279 | 364270 |
| Emerald 11 | 5282/280 | 364271 |
| Emerald 12 | 5282/281 | 364272 |
| Emerald 13 | 5282/282 | 364273 |
| Emerald 14 | 5282/283 | 364274 |
| Emerald 15 | 5282/284 | 364275 |
| Emerald 16 | 5282/285 | 364276 |
| Emerald 17 | 5282/286 | 364277 |
| Emerald 18 | 5282/287 | 364278 |
| Emerald 19 | 5282/288 | 364279 |
| Emerald 20 | 5282/289 | 364280 |
| Emerald #21 | 5349/445-446 | 364620 |
| Emerald #22 | 5349/447-448 | 364621 |

| | | |
|---|---|---|
| Emerald #30 | 5349//463-464 | 364622 |
| Emerald 31 | 5349/465-466 | 364623 |
| Emerald #43 | 5349/489-490 | 364624 |
| Emerald 44 | 5349/491-492 | 364625 |
| Emerald #45 | 5349/493-494 | 364626 |
| Emerald 2B | 2016040403 | 439433 |
| Emerald 3A | 2016040404 | 439434 |
| Emerald 4A | 2016040405 | 439435 |
| Emerald 40 | 2016040409 | 439436 |
| Emerald 41 | 2016040410 | 439437 |

2.  Matt Garlinghouse ("Garlinghouse") is the Managing Member of Grand View Ventures, LLC, a California limited liability company, which is a Member of Sunburst Minerals, LLC, an Arizona limited liability company ("Sunburst").

3.  Garlinghouse has been responsible for the management and maintenance of the Sunburst Claims since Sunburst acquired its interest in the Mining Claims on June 22, 2015, via a trustee sale.

4.  Sunburst acquired its interest in Sierra Resources mining claims through foreclosure of a loan made by Grand View to Sierra in connection with Sierra's bankruptcy.

5.  Emerald Copper filed a request to begin exploratory drilling operations on a portion of the ground covering the Sunburst Claims on March 25, 2015.

6.  Emerald filed a Notice of Intent (NOI) to do exploration drilling with the Bureau of Land Management ("BLM") Kingman office; the NOI was approved by the BLM Kingman office.  Drilling took place while Sierra owned the claims at issue.

7.  Emerald Copper installed a chain and lock on the primary road access to the Mining Claims.

8.  Sunburst paid the annual claim maintenance fees for the Sunburst Claims, as have Sunburst's predecessors-in-interest.

9.  The unpatented mining claims BT Nos. 1-18 held by Emerald Copper were staked in January 2012, and then again in September 2012.  BT Nos. 1-18 cover the same areas as Emerald 2B, 3A, 4A, and 5-20.

10.  The following claims are referred to herein as the Block Claims: Emerald 5 thru 20.

11.  The following unpatented mining claims are referred to herein as the 2004 claims: [left blank in original]

12.  The following unpatented mining claims are referred to herein as the 2004 Claims: Emerald #21, Emerald #22, Emerald #30, Emerald 31, Emerald #43, Emerald 44, and Emerald #45.

13. Location notices for the Block Claims and 2004 Claims were recorded in Mohave County Recorders Office in 2004 and 2005.

14. Sunburst and its predecessors in interest have maintained the 2004 Claims and the Block Claims in the years since they were located by filing the annual claim maintenance payments with the BLM.

15. Llao David Huntzinger ("Huntzinger") began working for Emerald Isle Mine in November 2004.

16. Huntzinger was hired by Joe Sawyer in November 2004 and worked at Emerald Isle Mine until some time in 2005 and intermittently thereafter.

17. Huntzinger is not a licensed surveyor or mineral surveyor.

18. Huntzinger's duties and responsibilities while working at the Emerald Isle Mine between November 2004 and 2005 included performing maintenance at the heap leach/PLS pond and the open pit, and checking monitor wells at the property.

19. The monitor wells checked by Huntzinger were located on private property to the south of the Emerald Isle Mine and an area east of the open pit but west of the road that circled the open pit.

20. During that time Huntzinger was not tasked with conducting a survey at the Emerald Isle Mine.

21. In June 2016, T. Robert Breen ("Breen"), acting on behalf of Sunburst, staked the following unpatented mining claims: Emerald 2B, Emerald 3A, Emerald 4A, Emerald 40, and Emerald 41.

22. In June 2016, Breen, acting on behalf of Sunburst, amended unpatented mining claims Emerald 5, Emerald 7, and Emerald 9.

23. Breen amended the unpatented mining claims Emerald 5, Emerald 7, and Emerald 9 to clarify that these unpatented mining claims did not take in ground covered by more senior claims held by a third party.

24. Garlinghouse observed various stakes and claim monuments at the Emerald Isle Mine and took pictures of these stakes and claim monuments.

25.  Emerald elected to cease maintaining the YJBS 39 unpatented mining claim and ceased paying the annual assessment, thereby allowing it to become invalid.

26.   Napier Ventures, Inc. ("Napier") is a publicly traded Canadian Company which owns Emerald Copper, a non-public Colorado corporation.

27. Donald T. Scoretz ("Scoretz") is the founder, CEO, and director of both Napier and Emerald Copper.

28.  Scoretz heard about the Emerald Isle Mine in 2009 or 2010.

29.  Scoretz engaged Southwest Land Surveying and Consulting ("Southwest") to assist in pursuing his interest in the Emerald Isle Mine area.

30.  Southwest is owned by Brian Dirk Hatter and Kenneth Schaff ("Ken"). Southwest performed work relating to the Emerald Isle Mine area for Napier or Emerald from 2012 through 2016.  Ken became a member of Napier's board on March 1, 2018.

31.  Ken is licensed as a land surveyor in Colorado and Utah.  He has been licensed in Colorado for about ten years and in Utah for about eight years.  He has been doing surveying work for 36 years.

32.  Ken was contacted by Scoretz about the Emerald Isle Mine area.  This was in late 2012.  He was given information that the annual assessments had not been paid on claims in that area, so he sent crews to stake new claims.

33.  Ken later went into the field to examine the area.  Believing there were inconsistencies in the prior claims, he called his father, Earnest  Schaff ("Ernie"), to take a look at the situation.  Ernie is licensed as a land surveyor in Arizona and several other states.  He is also a U.S. mineral surveyor.

34.  Ken and his crew were in the field for a total of four to five days.  Ernie was there on a couple of those days.

35.  Ernie has been working as a surveyor since 1975.  Most of his work has involved mining claims.

36.  Ernie uses GPS equipment to locate and monument claims.  He explained that a mining claim is of limited size.  A lode claim cannot exceed 300 feet on either side of the center line and cannot exceed 1,500 feet in length.  A claim should have a location monument and six additional stakes, for a total of seven.

37.  Monuments in the field are important because they alert a potential claimant that the ground is already claimed.  A location monument should have enough information to allow another person to access the recorded information describing the claim.

38.  Before going into the field at the Emerald Isle Mine area, Ernie did not look at any recorded documents and he did not speak to anyone who was at the site.

39.  Ernie and the crew in the field gathered information that was used to create a survey map of what they found in the field which is admitted in evidence as Defendant's Exhibit 50.  Of all the stakes they found, only one remained standing.  Approximately 42 stakes were found on the Block Claims.

40.  Ernie observed numerous location monuments.  They were all lying on the ground.  They had a tag reading LM for location monuments but did not have the required location information.  He disagrees with Ken's affidavit stating that they found numerous location notices in the field.  All Ernie saw were the LM tags.

41.  Not a single claim was found that was fully and properly monumented.
However, based on where some of the stakes were found some of the claims appeared
to exceed 600 feet in width.

42.  Ernie did not review any of the recorded location notices.  Ernie advised his
client that in his opinion none of the mining claims were valid.

43.  The Block Claims were located eight years before Ernie and his crew went
into the field.  The ground in the area is mostly flat desert terrain.  There is road access
to the area.  The area is also accessible to ATV operators.  Cattle could move through
the area.

45.  Shown copies of the recorded location notices for Emerald 5, Emerald 7, and
Emerald 9, Ernie agreed that the claim widths shown on the notices were 600 feet.  In
Ernie's opinion the location monuments control if they differ from the recorded location
notices.

46.  Brian Dirk Hatter ("Hatter") has worked in surveying since 1978.  He is a
licensed surveyor in Colorado and Nevada.  He received his mineral surveyor credential
in the mid-1980's.

47.  Hatter was asked by Emerald Copper to review Ernie's record of survey,
Defendant's Exhibit 50.  He went into the field.  He used GPS survey equipment.  He
concurred in all of Ernie's findings.

48.  In 2016 Hatter became a consultant for Southwest.  In December of 2016 he
was back in the field and observed some posts had fallen.  He also observed some new
staking.  He learned that Sunburst had done the new staking.  He learned from

Sunburst's recorded claim notices that the claims Sunburst staked in 2016 were staked in the month of June, about six months before Hatter's December investigation.

49.    Hatter could not locate any monuments relating to Emerald 2B except the location monument which did not have the location certificate.  No other monumentation of Emerald 2B was located.  Due to the short period of time from alleged claim staking and his field investigation, Hatter concluded that Emerald 2B had not been properly staked and so was invalid.  His testimony is consistent with his report admitted as Plaintiff's Exhibit 44 ("P 44").

50.    Regarding Emerald 3B, Hatter found the location monument which contained a location certificate, and he found three other monuments.  However, he testified that the location certificate in the field differed from the recorded certificate, from which he concluded the location monument had been moved.  His testimony is consistent with his report in P 44.

51.  In Hatter's opinion moving an original location monument invalidates the original claim and the amended claim.

52.  For Emerald 4A, Hatter found the location monument, but no others.  The location monument included a red capsule, but inside the capsule he found no location certificate.  He located no other monuments and concluded the claim was invalid.  His testimony is consistent with P 44.

53.  Hatter reviewed the recorded amended notice for Emerald 5 and he found the location monument as well as three other monuments.  He concluded from his field observations that the location monument had been moved.  In his opinion this invalidated the original claim and the amended claim.  This testimony is consistent with P 44.

54.  Hatter reviewed the recorded amended location notices for Emerald 7 and Emerald 9.  In the field he found the location monument and three other monuments for each of these.  He observed that the location monuments had been moved, which he testified invalidated the original and amended claims.  His testimony is consistent with P 44.

55. Regarding Emerald 40, Hatter found the location monument.  He observed that it was situated on a senior mining claim, the VJBS 39 lode claim.  Emerald 40 and VJBS 39 were not congruent, but because the Emerald 40 location monument was on a senior claim, Hatter testified that Emerald 40 was invalid.  This testimony is consistent with P 44.

56.  Regarding Emerald 41, Hatter found the location monument and five other monuments.  He found that the location monument was on private property not open to staking a mining claim.  For that reason, Hatter concluded that Emerald 41 was invalid. This testimony is consistent with P 44.

57.  On cross-examination Hatter agreed that he had not been on the disputed claims within the 90-day period for which the monuments were required to be in place. However, he testified that based on his experience if the required monuments had been placed, they should have been there in December when he performed his investigation. He pointed out that the monumentation of the nearby and much older TAN claims was observed in the field.

58.  Hatter was shown a copy of Plaintiff's Exhibit 23, which is a BLM decision dated June 10,  2013.  The decision held that the YJBS 39 claim was void ab initio because it was not filed within 90 days of the location.  Hatter agreed that if YJBS 39

was void at the time Emerald 40 was staked, Emerald 40 would be a valid claim. There is no evidence that YJBS 39 was relocated after the BLM decision and prior to the location of Emerald 40. The court finds that Emerald 40 is a valid claim.

59. Garlinghouse is the manager of Sunburst. He is also the owner of Sunburst through Grandview Ventures, which he owns. Sunburst acquired all of the disputed millsites and unpatented mining claims, except those staked in 2016, from Sierra Resources Group ("Sierra") in late 2014. Matt had been an investor in and a lender to Sierra, and eventually foreclosed his secured interest to obtain Sierra's properties. Sunburst has paid all required annual maintenance fees for the claims since their acquisition.

60. Emerald overstaked some of the Sierra claims as early as 2012.

61. Garlinghouse encountered Scoretz, Ken, and Barry Price on the property after Sunburst acquired the Sierra claims. On later visits to the property, Garlinghouse often saw Huntzinger. Huntzinger had been a security guard for Sierra.

62. Garlinghouse has walked most of the property. He has seen numerous monuments and stakes on the property. He took photos of some. The only photos taken by Garlinghouse in evidence are four photos in Plaintiff's Exhibit 46. Prior to the foreclosure and this lawsuit with Emerald, Garlinghouse did nothing to verify that there was proper monumentation in the field for the Sunburst claims beyond walking the property and seeing a number of claim stakes.

63. There is a heap leach pit on the property. There are also three monitoring wells on the property.

64. There is a tailings pile on the property.

65.  Sunburst hired Breen to stake additional claims in the Emerald Isle Mine area.  He staked two new claims, Emerald 40 and Emerald 41.  He was also engaged to amend some claims which conflicted with the earlier staked TAN claims.

66.  Matt saw new stakes and notices of location after Breen had performed his work.

67.  Garlinghouse saw numerous monuments in the area of the Block Claims on the east side of the property.

68. Breen and his spouse are the owners of Environmental Field Services where he has worked 18 years.  He is registered as a land surveyor in Arizona.

69.  Breen has been staking mining claims for about 20 years.  He knows the requirements for staking unpatented mining claims under state and federal law.  He has staked several thousand claims, mostly in Arizona.  Of those several thousand, the BLM has rejected 40 to 50.

70.  Breen also conducts field surveys of unpatented mining claims including forensic surveys.  Forensic surveys are conducted by examining the original claim notice and then going into the field to locate the claim on the ground.  He has performed about 50 forensic surveys.

71.  In recent years when conducting a survey, Breen works with sophisticated GPS equipment which is generally accurate within three hundredths of a foot.

72. In 2016 Breen was asked by Sunburst to stake some new claims and to amend some existing claims in the Emerald Isle Mine area.

73.  Breen located the Emerald 2B, Emerald 3A, Emerald 4A, Emerald 40, and Emerald 41 claims and placed a certificate of location and necessary monuments in June 2016.

74.  Breen testified that he followed the legal requirements for staking the claims referenced in paragraph 73.

75.  Breen's testimony and admitted documentary evidence shows that the location notices for the claims referenced in paragraph 73 were recorded with Mohave County and provided to the BLM.

76.  Breen amended the existing Emerald 5 claim.  The claim was reduced in size so it would not include ground which was within two of the previously located TAN claims.

77.  When he amended Emerald 5, Breen placed a certificate of location on the claim and staked the necessary monuments.  Breen described the requirements for amending an unpatented mining claim and testified that he complied with all of them.

78.  The evidence shows that the amended claim was recorded with Mohave County and the BLM.

79.  Breen amended the existing Emerald 7 claim.  It was reduced in size so that it would not overstake two of the previously staked TAN claims.

80.  Breen placed a certificate of location on the amended claim and placed all of the required monuments.  He testified that he complied with all of the requirements for amending a claim.

81.  The evidence shows that the location notice for amended Emerald 7 was recorded with Mohave County and the BLM.

82.  Breen amended the existing Emerald 9 claim.  This was done to avoid overstaking TAN 15 or TAN 13.   As with Emerald 5 and Emerald 7, Breen testified that he placed the location notice and the necessary monuments as required by law.

83.  The evidence shows that the location notice for amended Emerald 7 was recorded with Mohave County and the BLM.

84.  Breen moved the location monuments for Emerald 5, Emerald 7, and Emerald 9 to ensure that the location was not situated on a senior claim.

85.  Breen created maps—Plaintiff's Exhibits 21 and 22—showing older claim monumentation that he could find in the field.  The map shows that Emerald 45 is located in its entirety on a senior claim.  It follows that Emerald 45 is void.

86.  Breen was asked to do a forensic survey in 2018.  When performing that survey, Breen found a few of the monuments and stakes he placed in 2016. He did not see all of them.  Breen found it "quite odd" that he did not find all of them, because it had only been two years since he placed them.

87.  Using GPS data collected while he was in the field, Bren created maps—Plaintiff's Exhibits 13, 14, and 15—which show  monuments and stakes he found in the field.  Many of these were strewn about and not standing.

88. The recorded location notices for the Block Claims show that none exceeded 600 feet in width.  Breen testified that it is not unusual to find monumentation in the field that is off by several feet from what is stated in the recorded location notice.

89.  Based on his field observations, Breen created Plaintiff's Exhibit 11.  It depicts the claims drawn to scale.  Breen concluded that the field data shows the Block

Claims are not oversized because the total length of the eastern boundary of the claims is less than 6000 feet.

90. Hatter agreed with Breen on the length of the eastern boundary. He opined that the Block Claims were nevertheless oversized, because Ken's survey—Defendant's Exhibit 50—showed the length of the centerline of the claims to exceed 6000 feet. Hatter testified that he verified the length and it was about 6,150 feet. Exhibit 50 depicts both the western and eastern boundaries of the Block Claims as being no more than 6,000 feet with only the centerline being over 6,000 feet.

91. Defendant's Exhibit 50 and the testimony in evidence does not show which of the Block Claims exceeds 600 feet and by how much. In motion practice, Emerald asserted the Block Claims varied from 607 to 631 feet. No evidence to that effect was presented at trial. Taking the total excess shown in Defendant's Exhibit 50 and allocating it equally to the claims would show that each is 15 feet longer than it should be, but only on the center line. The evidence shows that many stakes were knocked down and may not have been exactly where they were originally placed.

92. The court finds the evidence is insufficient to support a finding that any of the Block Claims is oversize. Emerald has not carried its burden of proof on this issue. The court also finds that the evidence is insufficient to show that the Block Claims were not properly located and monumented when they were located. Emerald has failed to carry its burden of proof on this issue. The court finds that the Block Claims are valid.

93. Portions of the deposition testimony of Huntziger were admitted in evidence. They are contained in Plaintiff's Exhibit 17.

94. Huntziger is not a licensed land surveyor, nor is he a mineral surveyor. He has no training as a surveyor. He has never staked an unpatented mining claim. He testified that he does not know what an unpatented mining claim is. He testified that he would not be able to recognize an unpatented mining claim in the field.

95. Huntziger started working in the vicinity of the Emerald Isle Mine in about November of 2004. He was hired by Joe Sawyer who worked for Saint Genevieve Resources ("SGR"). At some point SGR ceased mining operations and laid off its employees including Huntziger, which he testified was in 2005 or 2006. At the time of his deposition he was working for Napier. Ken Schaff hired him. Huntziger was vague about his job responsibilities and position.

96. While working for SGR, Huntziger worked on building dams in an area north of the open pit. Once a month he went out to monitor the four monitor wells. One of those was off the property, and three were on it. He was vague about the locations of the wells but described them in relation to the open pit.

97. Huntziger's work did not include looking for unpatented mining claims. He did not know what surveying work SGR was doing in the area. He did see some drilling, but did not know exactly what was being done or where. He paid no attention to it. It was not part of his work.

98. Huntziger saw Howard Metzler put in some posts, but he does not know where.

99. In 2012 he saw new posts on the Emerald Isle Mine. He did not see who placed them. He told SGR's Rod Martin about them. Martin told him they were placed by Emerald Copper.

100.  Although in his years at the Emerald Isle Mine Huntzinger observed numerous posts, he does not associate them with particular claims.  However, he did conclude that Ken was overstaking existing claims which may have had voids, or open areas.  While working for SGR he looked into how to stop Ken.  After consulting the BLM and County Sheriff, he concluded he had no authority to do so.

101.  Huntziger's testimony is both confused and confusing.  The court concludes that Huntziger is not a source of reliable information regarding which claims in the Emerald Isle Mine area are valid and which are invalid.  Neither his affidavit, which is Defendant's Exhibit 5, nor his deposition testimony is relied upon with respect to any issues which the court must resolve.

102.  The deposition testimony of Joe Sawyer was admitted as Plaintiff's Exhibit 16.  The court's review of the admitted testimony disclosed no evidence that is material to the issues before the court.

103.  Considering all of the testimony and admitted exhibits, the court finds that the 2004 Claims were properly monumented at the time of their location.  All of the 2004 Claims are valid with the exception of Emerald 45, which is invalid because it was not located on ground open to location.

104.  Respecting the 2016 Claims, the absence of required monumentation only six months after the claims were located when contrasted with monumentation found for the nearby and much older TAN claims leads the court to find that, with the exception of Emerald 40, the 2016 claims were not properly staked in the field and are therefore

invalid.  Emerald has carried its burden of proof as to these claims.  Sufficient monumentation of Emerald 40 was found in the field.  Emerald 40 is valid.

### III.  CONCLUSIONS OF LAW

1.  The substantive law which applies is the law of the United States and the law of Arizona where the disputed mining claims are located.

2.  The burden of proof is on Emerald to show the invalidity of the Sunburst claims.  This was established as the law of the case in the court's summary judgment order.  Nevertheless, the court has reviewed the cases cited by Emerald for the proposition that the burden falls equally on Sunburst and Emerald to show the validity of their own claims.  The cases cited by Emerald are all distinguishable.

3.  When the location of an unpatented mining claim is sufficiently marked in the field and all other required acts are performed, "the right of possession is fully vested in the locator, and he cannot be divested of this right by the removal or obliteration or destruction of the monuments, stakes, marks, or notices done without his fault, while he continues to perform the necessary work upon the claim."  *Nichols v. Ora Tahoma Mining Co.*, 151 P.2d 615, 622 (Nev. 1944).  As relevant here, performance of the necessary work means making the annual claim maintenance payments.

### IV.  DIRECTION FOR SUBMISSION OF PROPOSED JUDGMENTS

Without waiving any argument it may wish to raise on appeal, each party shall file a notice attached to which shall be a proposed form of judgment which reflects the court's findings of fact and conclusions of law.  If they can agree on a single form, the

parties shall submit a joint proposed judgment.  The notice and proposed judgment shall be filed within 14 days.

DATED this 31st day of January 2019.


/s/ JOHN W. SEDWICK
SENIOR JUDGE, UNITED STATES DISTRICT COURT